UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x

MARIAMA AMAR,                                    :
                                                 :          __OPINION AND ORDER__
                            Plaintiff,           :
                                                 :             14 Civ. 2503 (ER)
            -against-                            :
                                                 :
NEW YORK CITY HEALTH AND HOSPITALS              :
CORPORATION,                                     :
                                                 :
                            Defendant.           :

------------------------------------------------------------------------x

Ramos, D.J.:

Mariama Amar ("Plaintiff"), filed a *pro se* Complaint in this action on April 7, 2014

alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title

VII"), against her employer, the New York City Health and Hospital Corporation ("Defendant")

for hostile work environment based on Plaintiff's race, color, and national origin, and retaliation

against Plaintiff for a 2011 complaint filed against Defendant.  Doc. 2.  Before the Court is

Defendant's motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of

Civil Procedure.  For the reasons stated below, Defendant's motion is GRANTED in part and

DENIED in part.

## I.   **Factual Background**[1]

Plaintiff is an African American woman originally from Africa employed by Defendant

---

[1] The facts are taken from the Complaint, the Answer, Plaintiff's Affirmation in Opposition to Defendant's Motion for Judgment on the Pleadings ("Plaintiff's Opposition"), and the attached exhibits.  As discussed *infra* at Section III.b, on a Rule 12(c) motion the Court may properly review the pleadings and materials attached to the pleadings. *See L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011).  The Court may also review a *pro se* plaintiff's motion papers and attached materials.  *See Rodriguez v. McGinnis*, 1 F. Supp. 2d 244, 246-47 (S.D.N.Y. 1998).  The following facts are taken as true for the purpose of the instant motion.  *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006).

as a patient care assistant at Harlem Hospital Center.  Doc. 2 at I.C, 6;[2] Doc. 19 ¶ 3, Ex. A.

Plaintiff alleges that she was harassed by two of her co-workers, Shelly Hendricks ("Hendricks")

and Denise Mcclatchy-Jemison ("Jemison") based on her race, color, and national origin, and

that Defendant failed to provide her with a "safe working environment."  Doc. 2 at II.D, E.

Plaintiff also alleges that Defendant "did not take action immediately to protect [her] from the

hostile work environment" in retaliation for a complaint Plaintiff filed with the New York State

Division of Human Rights ("NYSDHR") against Defendant in 2011.  *Id.* at II.E, 9; Doc. 19 Ex.

C; Doc. 28 at 4.

The alleged abuse began in September 2010, when Plaintiff alleges that Hendricks cursed

her after asking her to take a patient's vital signs by calling her "fat ass," "retard," and "bitch."

Doc. 2 at 12.  Throughout November 2010, Jemison and Hendricks continued to harass Plaintiff

and call her "monkey," "devil," "fat ass," "retard," and "one leg."  *Id.* at 10.  In a handwritten

letter dated December 2, 2010 and addressed to Senior Morris ("Morris"), identified by Plaintiff

as "supervisor ADN,"[3] and copying Lauren Goodridge ("Goodridge") of Defendant's Human

Resources/Labor Relations department, and Union Representative Belford Whitted ("Whitted"),

Plaintiff notified them of Jemison's and Hendricks' conduct.  *Id.* at 10-11.

On December 9, 2010, Jemison "continuously" called Plaintiff "bitch," "monkey," and

"one leg."  *Id.* at 11.  On the same day, Hendricks told Plaintiff "she will make sure I get killed"

and also called Plaintiff a "bitch," "retard," "asshole," "stupid African," and "devil."  *Id.* at 11,

13.  Hendricks also challenged Plaintiff to "get up and fight her" when Plaintiff did not reply to

---

[2] Documents attached to the Complaint and Plaintiff's Opposition are not identified as exhibits.  The Court will refer to these documents by ECF page number.

[3] Plaintiff does not define the term "ADN."

Hendricks' request that she perform a vision and hearing evaluation on Jemison's patient.[4]  *Id.* at 13.  The head nurse, who was present for the incident, told Hendricks to stop yelling and calling Plaintiff names because Plaintiff may report her.  *Id.*

On December 10, 2010, Plaintiff again notified Goodridge and Whitted by handwritten letter of Jemison's and Hendricks' conduct and alleged that "nothing has been done to stop" Jemison and Hendricks.  *Id.* at 11.  In a handwritten letter dated December 20, 2010 and addressed "To Whom It May Concern," Plaintiff again described Hendricks' and Jemison's conduct.  *Id.* at 12-14.  The record does not reflect any action taken by Defendant as a result of Plaintiff's December 2, December 10, and December 20, 2010 letters.

Nine months later, on September 20, 2011, Hendricks allegedly pushed Plaintiff with both hands, causing Plaintiff to fall, when Plaintiff tried to remove a blood pressure machine from the asthma room.  *Id.* at II.E, 8-9.  Plaintiff reported the incident at the nursing station and notified Morris.  *Id.* at 9.  A Supervisor's Report of Occupational Accident/Injury was filed with Defendant on September 20, 2011.  *Id.* at 8-9.  On October 11, 2011, Plaintiff filed a claim with the NYSDHR against Defendant.  Doc. 19 Ex. C.  The case was resolved by stipulation and release approximately nine months later on June 26, 2012.  Doc. 2 at II.E; Doc. 19 ¶ 8.

Plaintiff alleges that she returned to work on April 11, 2013.  *Id.*  Plaintiff does not state when she left work, whether she left work because of the September 20, 2011 incident, and does not otherwise provide any information regarding the eighteen month time period between

---

[4] In a previous incident in November 2010, Hendricks yelled at Plaintiff after asking her to perform a hearing and vision evaluation on one of Jemison's patients.  *Id.* at 12-13.  After the November 2010 incident, the head nurse had a meeting with Plaintiff, Hendricks, Jemison and other employees where it was established that patients registered before four p.m. should have a vision and hearing evaluation performed at the same time as the vital signs evaluation, presumable by the same attendant, while patients registered after four p.m. should have a vision and hearing evaluation performed by the overnight attendant.  *Id.*  On December 9, 2010, Jemison took the patient's vital signs at 3:17 p.m. but did not perform a vision and hearing evaluation, contrary to the above-described meeting.  *Id.* at 13.

October 11, 2011 and April 11, 2013.  However, Plaintiff alleges that Jemison began harassing

her again almost immediately upon her return to work.

On April 12, 2013, and repeatedly from April 15 through April 18, 2013, Plaintiff claims

that Jemison called her "fat African" and "porch monkey" and told her "I wish you were dead

and never came back to work."  Doc. 28 at 3, 6.  Plaintiff notified Human Resources/Labor

Relations and Jorge Vidro ("Vidro"), identified by Plaintiff as a Director of Equal Employment

for Defendant, of Jemison's conduct in a handwritten letter dated April 19, 2013.  *Id.* at 6.  On

May 3, 2013, Vidro told Plaintiff that Labor Relations would handle the matter.  *Id.* at 7.  On

May 6, 2013, Plaintiff again notified Vidro and Human Resources/Labor Relations by letter that

Jemison continued to make racial remarks to Plaintiff and told Plaintiff that "I will cut your

throat fat African [sic]."  *Id.*  As a result of these incidents, Plaintiff contends that she was afraid

to go to work.  *Id.*

On May 10, 2013, Plaintiff alleges that Jemison struck Plaintiff's left forearm twice with

her elbow and called Plaintiff a "stupid African" when Plaintiff attempted to enter the vision and

hearing examination room with her patient.  Doc. 2 at II.E, 6-7; Doc. 28 at 8-9; Doc. 19 Ex. A.

Plaintiff notified her supervisor of the incident.  Doc. 2 at 7.  A Supervisor's Report of

Occupational Accident/Injury was filed with Defendant on May 10, 2013 by Victoria Kusi

("Kusi"), Associate Director of Nursing.  *Id.* at 6-7.  A Police Crime and Incident Report was

also filed with the police on May 10, 2013 by Kusi detailing the "incident of workplace

violence."  Doc. 28 at 8.  After the incident, "Jemison was escorted to HR where she was

relieved of duty pending further investigation."  *Id.*  Defendant also "deemed it appropriate" that

if Jemison returned to work, she would be assigned to another unit in order "to avoid any further

altercation between the two employees."  Doc. 19 Ex. C.

## II.     Procedural Background

On June 25, 2013, Plaintiff filed a complaint with the NYSDHR against Defendant regarding the May 10, 2013 incident, alleging violations of the New York State Human Rights Law § 296 ("NYSHRL") and Title VII.  Doc. 19 Exs. A, C.  A copy of Plaintiff's NYSDHR complaint was sent to the U.S. Equal Employment Opportunity Commission (the "EEOC") on the same day.  Doc. 19 Ex. A.  On December 20, 2013, a Determination and Order After Investigation by the NYSDHR found no probable cause existed to believe Defendant engaged in unlawful discriminatory practices.  Doc. 19 Ex. C.   On February 11, 2014, the EEOC sent a Dismissal and Notice of Rights to Plaintiff adopting the NYSDHR's findings and notifying Plaintiff that she may file a lawsuit against Defendant within ninety days of receipt of the notice. Doc. 2 at 5; Doc. 19 Ex. B.

On April 7, 2014, Plaintiff timely commenced this action by filing the *pro se* Complaint.[5] Doc. 2.  Defendant answered the Complaint on December 16, 2014.  Doc. 19.  On December 23,

---

[5] In the instant action, Plaintiff does not bring a claim under NYSHRL § 296.  Doc. 2.  The only claims alleged are pursuant to Title VII.  *Id.*  Even had Plaintiff brought claims pursuant to NYSHRL § 296, "claims brought under New York State's Human Rights Law are analytically identical to claims brought under Title VII."  *Torres v. Pisano*, 116 F.3d 625, 629, n. 1 (2d Cir. 1997); *see also Ortiz-Moss v. New York City Dept. of Transp.*, 623 F. Supp. 2d 379, 402 (S.D.N.Y. 2008) ("Plaintiff's New York state-law hostile work environment claim is governed by the same standards as claims under Title VII."); *Haggood v. Rubin & Rothman, LLC*, No. 14 Civ. 34L (SJF) (AKT), 2014 WL 6473527, at *13 (E.D.N.Y. Nov. 17, 2014) ("The standards for evaluating hostile work environment and retaliation claims are identical under Title VII and the NYSHRL.").  However, the Second Circuit noted that it has been suggested, but not decided, that "[i]n terms of imputing liability to the employer the [NYSHRL] imposes a stricter standard than Title VII."  *Torres*, 116 F.3d at 629, n.1; *see also Hernandez v. Jackson, Lewis, Schnitzler & Krupman*, 997 F. Supp. 412, 416 (S.D.N.Y. 1998) ("Under the NYHRL, the plaintiff must prove that the employer became a party to [the discrimination] by encouraging, condoning, or approving it, while a Title VII plaintiff must show that the employer provided no reasonable avenue of complaint or knew of the harassment and did nothing about it.") (internal citations and quotations omitted).

2014, the Court granted Defendant leave to file its motion for judgment on the pleadings.

Defendant filed the instant motion on January 23, 2015.  Doc. 22.

## III.    Standard of Review

### a.  Rule 12(c) Motion

Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay

trial—a party may move for judgment on the pleadings."  FED. R. CIV. P. 12(c).  "Judgment on

the pleadings is appropriate if, from the pleadings, the moving party is entitled to judgment as a

matter of law."  *Burns Int'l Sec. Servs., Inc. v. Int'l Union, United Plant Guard Workers of Am.*

*(UPGWA) & Its Local 537*, 47 F.3d 14, 16 (2d Cir. 1995) (citations omitted).

The Court applies the same standard of review on a motion for judgment on the pleadings

under Rule 12(c) as on a motion to dismiss under Rule 12(b)(6).  *Caplaw Enters.*, 448 F.3d at

521.  The Court must accept all factual allegations in the complaint as true and draw all

reasonable inferences in Plaintiff's favor.  *Id.*  However, the Court is not required to credit "mere

conclusory statements" or "threadbare recitals of the elements of a cause of action."  *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a

claim to relief that is plausible on its face.'"  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).  A

claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing

*Twombly*, 550 U.S. at 556).  More specifically, a plaintiff must allege sufficient facts to show

"more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  If the plaintiff has not

"nudged [his] claims across the line from conceivable to plausible, [the] complaint must be

dismissed."  *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 680.

In a discrimination action, the *Iqbal* plausibility standard applies in conjunction with the standard for pleading employment discrimination.  The Supreme Court has held that in an employment discrimination action a complaint need not contain specific facts that establish a *prima facie* case of discrimination.  *Swierkiewicz v. Sorema, N.A.,* 534 U.S. 506, 515 (2002); *E.E.O.C. v. Port Auth. of New York and New Jersey*, 768 F.3d 247, 254 (2d Cir. 2014) (recognizing that "*Swierkiewicz* has continuing viability, as modified by *Twombly* and *Iqbal*); *Trachtenberg v. Dept. of Educ. of City of New York*, 937 F. Supp. 2d 460, 465 (S.D.N.Y. 2013) ("The Second Circuit has suggested that 'at a minimum, employment discrimination claims must meet the standard of pleading set forth in *Twombly* and *Iqbal,* even if pleading a *prima facie* case is not required.'").  However, the elements of a *prima facie* discrimination case "provide an outline of what is necessary to render a plaintiff's employment discrimination claims for relief plausible." *Trachtenberg*, 937 F. Supp. 2d at 465 (citing *Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 461 (S.D.N.Y. Feb. 7, 2013)).  "[I]n the absence of a facially plausible discrimination claim that gives fair notice to a defendant of the acts that form the basis of the claim, dismissal at the pleading stage is warranted." *Id.* (citing *Williams v. Addie Mae Collins Cmty. Serv.,* No. 11 Civ. 2256 (LAP), 2012 WL 4471544, at *3 (S.D.N.Y. Sept. 27, 2012)).

The same standard applies to motions to dismiss *pro se* complaints.  *See Mancuso v. Hynes*, 379 Fed. App'x 60, 61 (2d Cir. 2010).  However, the Court is also obligated to construe a *pro se* complaint liberally and to interpret a *pro se* plaintiff's claims as raising the strongest arguments that they suggest.  *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011); *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006).  While the "dismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases," *Boykin v. KeyCorp,* 521 F.3d 202, 216 (2d Cir. 2008), to survive a motion to dismiss a plaintiff's pleadings

must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."
*Iqbal*, 556 U.S. at 678.  A complaint that "tenders naked assertions devoid of further factual enhancement" will not suffice.  *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks and brackets omitted); *see also Triestman*, 470 F.3d at 477 ("[P]ro se status 'does not exempt a party from compliance with relevant rules of procedural and substantive law.'") (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

### b. Extrinsic Materials

"On a 12(c) motion, the court considers 'the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case.'"  *L–7 Designs, Inc.*, 647 F.3d at 422 (quoting *Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009)).  The court may also consider documents incorporated into the complaint by reference or integral to the complaint, provided there is no dispute regarding their authenticity, accuracy, or relevance.  *Id.*; *see also DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (reviewing a 12(b)(6) dismissal) (citations omitted); *Piazza v. Florida Union Free Sch. Dist.*, 777 F. Supp. 2d 669, 677 (S.D.N.Y. 2011) (12(c) motion).  "Where other extrinsic materials are submitted to the Court for consideration in connection with a 12(c) motion, the additional materials must either be excluded, or the motion must be converted to one for summary judgment[.]"  *Korova Milk Bar of White Plains, Inc. v. PRE Properties, LLC*, No. 11 Civ. 3327 (ER), 2013 WL 417406, at *6 (S.D.N.Y. Feb. 4, 2013).  While the court must convert a 12(c) motion into a motion for summary judgment when it considers matters outside the pleadings, "the decision to convert is a matter for the court's discretion."  *Id.* (citing *Wajilam Exports (Singapore) Pte. Ltd. v. ATL Shipping Ltd.*, 475 F. Supp. 2d 275, 278 (S.D.N.Y. 2006)).

Here, the materials attached to the Complaint and the Answer may properly be considered by the Court in deciding the instant motion.  *See L–7 Designs, Inc.*, 647 F.3d at 422; *see also Koo v. NYC Dept. of Bldgs.*, No. 04 Civ. 9628, 2006 WL 156399, at *2 (S.D.N.Y. Jan. 19, 2006).[6]  Plaintiff attaches six documents to the Complaint:  (1) the EEOC Dismissal and Notice of Rights dated February 11, 2014; (2) Supervisor's Report of Occupational Accident/Injury dated May 10, 2013; (3) Supervisor's Report of Occupational Accident/Injury dated September 20, 2011; (4) Plaintiff's handwritten letter, dated December 2, 2010, to Morris copying Goodridge and Whitted; (5) Plaintiff's handwritten letter, dated December 10, 2010, to Goodridge copying Whitted; and (6) Plaintiff's handwritten letter, dated December 20, 2010, addressed "To Whom It May Concern."  Doc. 2.  Defendant also attached three documents to its Answer:  (1) the EEOC Notice of Charge of Discrimination and Verified Complaint filed by Plaintiff with NYSDHR on June 25, 2013, Doc. 19 Ex. A; (2) the EEOC Dismissal and Notice of Rights dated February 11, 2014, Doc. 19 Ex. B; and (3) NYSDHR Determination and Order After Investigation dated December 20, 2013, Doc. 19 Ex. C.

Plaintiff also attaches four documents to her Opposition:  (1) Plaintiff's handwritten letter dated April 19, 2013 to Vidro copying Human Resources/Labor Relations; (2) Plaintiff's handwritten letter dated May 6, 2013 "To Whom It May Concern" copying Vidro and Human Resources/Labor Relations; (3) Hospital Police Crime and Incident Report dated May 10, 2013; and (4) Plaintiff's referral for physical therapy.  Doc. 28.  "Although material outside a

---

[6] Alternatively, the Court "may take judicial notice of documents in the public record, which includes records and reports of administrative bodies, *i.e.*, the NYSDHR."  *Vale v. Great Neck Water Pollution Control Dist.*, No. 14 Civ. 4229 (ADS) (SIL), 2015 WL 248603 at *4 (E.D.N.Y. Jan. 20, 2015) (quoting *Volpe v. Nassau Cty.*, 915 F. Supp. 2d 284, 291 (E.D.N.Y. 2013)); *see also Morris v. David Lerner Assocs.*, 680 F. Supp. 2d 430, 436 (E.D.N.Y. 2010) ("with respect to administrative filings (such as the NYSDHR and the EEOC) and decisions, the court may consider such documents because they are public documents filed in state administrative proceedings, as well as because they are integral to the plaintiff's claims.").

complaint generally is not to be taken into consideration on a motion to dismiss, the policy

reasons favoring liberal construction of *pro se* complaints permit a court to consider allegations

of a *pro se* plaintiff in opposition papers on a motion where, as here, those allegations are

consistent with the complaint." *Rodriguez*, 1 F. Supp. 2d at 246-47.  "[T]his exception to the

general rule that a court is not to consider materials outside of the complaint derives from the

'special solicitude' that *pro se* plaintiffs are afforded." *Ceara v. Deacon*, No. 13 Civ. 6023

(KMK), 2014 WL 6674559, at *8 (S.D.N.Y. Nov. 25, 2014).   Here, the documents attached to

Plaintiff's Opposition are consistent with the Complaint.  Defendant also does not disputed the

authenticity or relevance of the attached documents for the purposes of the instant motion.[7]  As

such, the Court will consider the materials attached to Plaintiff's Opposition.

## IV.   Discussion

### a.  Hostile Work Environment

Title VII makes it "an unlawful employment practice for an employer . . . to discriminate

against any individual with respect to his compensation, terms, conditions, or privileges of

employment, because of such individual's race, color, religion, sex, or national origin."  42

U.S.C. § 2000e–2(a)(1).  "Thus, when the workplace is permeated with 'discriminatory

intimidation, ridicule, and insult,' that is sufficiently severe or pervasive to alter the conditions of

the victim's employment and create an abusive working environment, Title VII is violated."

*Risco v. McHugh*, 868 F. Supp. 2d 75, 115 (S.D.N.Y. 2012) (citing *Harris v. Forklift Sys., Inc.*,

510 U.S. 17, 21 (1993); *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 65 (1986)).  To prevail

---

[7] Defendant's Motion for Judgment on the Pleadings suggests that at least one of Plaintiff's letters may not be credible. *See* Def.'s Mem. at 8-9 ("this [December 20, 2010] letter describes arguments involving visual/hearing testing, which was at issue during the May 10, 2013 incident with Ms. Mcclatchy-Jemison.").  While Plaintiff's letters may ultimately prove to be non-credible, the court is "not entitled to make an adverse credibility finding on a Rule 12(c) motion." *Deravin v. Kerik*, 335 F.3d 195, 203 (2d Cir. 2003).

on a hostile work environment claim, a plaintiff must also show "that a specific basis exists for imputing the objectionable conduct to the employer."  *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002); *see also Morris*, 680 F. Supp. 2d at 441.

### i. Existence of a Hostile Work Environment

To state a claim for hostile work environment under Title VII, "a plaintiff must plead facts that would tend to show that the complained of conduct: (1) is objectively severe or pervasive, that is, the conduct creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of plaintiff's . . . characteristic protected by Title VII."  *Jackson v. NYS Dept. of Labor*, No. 09 Civ. 6608 (KBF), 2012 WL 843631, at *3 (S.D.N.Y. Mar. 12, 2012) (quoting *La Grande v. DeCrescente Distrib. Co.*, 370 Fed. App'x 206, 209 (2d Cir. 2010) (summary order)).[8]  To determine whether a work environment is hostile or abusive, courts look at the totality of the circumstance and consider "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is threatening and humiliating, or a mere offensive utterance; and (4) 'whether it unreasonably interferes with an employee's work performance.'"  *Patane v. Clark,* 508 F.3d 106, 113 (2d Cir. 2007) (quoting *Forklift Sys., Inc.,* 510 U.S. at 23).  Ordinarily, isolated instances "do not rise to the level of objective hostility[.]" *Kouakou v. Fideliscare New York*, 920 F. Supp. 2d 391, 402 (S.D.N.Y. 2012) (citing *Cruz v. Coach Stores*, 202 F.3d 560, 570 (2d Cir. 2000), *superseded by regulation on separate grounds by* N.Y.C. Local L. No. 85); *see also Williams v. Cty. of Westchester,* 171 F.3d 98, 100-01 (2d

---

[8] The same standards generally apply to race-based and sex-based hostile environment claims.  *See Faragher v. City of Boca Raton*, 524 U.S. 775, 787 n.1 (1998) (noting the standards for what amounts to actionable abuse are the same for racial and sexual harassment); *Richardson v. New York State Dep't of Corr. Servs.*, 180 F.3d 426, 436 n.2 (2d Cir. 1999) ("Generally, the same standards apply to both race-based and sex-based hostile environment claims."), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).

Cir. 1999) (per curiam).  However, where a single incident is "extraordinarily severe" or a series of incidents are "sufficiently continuous and concerted," the conduct may be considered objectively hostile.  *Id.*  While acknowledging that "the standard for establishing a hostile work environment is high," the Second Circuit has "repeatedly cautioned against setting the bar too high, noting that [w]hile a mild, isolated incident does not make a work environment hostile, the test is whether 'the harassment is of such quality or quantity that a reasonable employee would find the conditions of her employment *altered for the worse.*"  *Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004) (citing *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003)) (alteration and emphasis original).  "[T]he fact that the law requires harassment to be severe or pervasive before it can be actionable does not mean that employers are free from liability in all but the most egregious cases."  *Id.*

Here, Plaintiff claims the existence of a hostile work environment based on (1) harassment occurring from September through December 2010; (2) the September 20, 2011 incident in which Hendricks pushed Plaintiff to the ground; and (3) harassment occurring from April through May 2013, including the May 10, 2013 incident in which Jemison twice elbowed Plaintiff.  Doc. 2; Doc. 28.  Based on the totality of the circumstances alleged, including the multiple complaints of alleged harassment Plaintiff made to Defendant, Plaintiff states a claim for hostile work environment.

After her return to work in April 2013,[9] Plaintiff alleges that Jemison "repeatedly" called her a "fat African" and "porch monkey" on April 12, 2013 and then repeatedly from April 15

---

[9] Although Plaintiff nowhere alleges that the 2010 and 2011 harassing conduct was due to any of Plaintiff's protected characteristics, the fact that Hendricks and Jemison allegedly called Plaintiff, among other epithets, "monkey," arguably reflects racial or national origin animus.  Doc. 2 at 10-14.  Additionally, Hendricks purportedly told Plaintiff "she would make sure I get killed" and once in 2010 called Plaintiff a "stupid African."  *Id.* at 11, 13.

Defendant does not argue that the alleged 2010 and 2011 harassing conduct is time barred under Title VII.  *See Elmenayer v. ABF Frgt. Sys., Inc.*, 318 F.3d 130, 133 (2d Cir. 2003) ("A Title VII claim is time-barred if the

through May 3, 2013.   Doc. 28 at 3, 6.  Jemison also allegedly told Plaintiff that she "wished [Plaintiff] were dead and never came back to work" and that she would "cut [Plaintiff's] throat fat African [sic]."  *Id.* at 6-7.  This conduct culminated on May 10, 2013, when Jemison elbowed Plaintiff twice in the forearm and called her "stupid African" in front of her patient.  Doc. 2 at 7; Doc. 19 Ex. A.

As a result of Jemison's conduct, Plaintiff perceived her work environment to be hostile or abusive.  *See* Doc. 2 at II.E ("my employer is not providing me with a safe working environment."); Doc. 19 Ex. A ("Harlem Hospital did not provide me with a safe working environment."); Doc. 28 at 7 ("I am afraid to go to work because of the hostile work environment.").   Plaintiff's contention that she was afraid to go to work as a result of Jemison's conduct suggests an "unreasonable interfere[nce] with [Plaintiff's] work performance."  Doc. 28 at 7; *Patane,* 508 F.3d at 113.  Moreover, on at least one occasion, Jemison physically interfered with Plaintiff's ability to perform her job.  *See* Doc. 2 at 7 (describing the May 10, 2013 incident where Jemison prevented Plaintiff from entering the hearing and vision room with her patient by elbowing her).

Plaintiff also alleges an objectively hostile or abusive environment.  While a "mere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee" is not, by itself, actionable under Title VII, *Meritor*, 477 U.S. at 67, an objectively hostile and abuse environment may be plausibly inferred based on the totality of the circumstances present here.  *First*, Jemison's comments were not isolated incidents.  Over approximately one month,

---

plaintiff, after filing a charge with an appropriate state or local agency, does not file a charge with the EEOC within 300 days after 'the alleged unlawful employment practice.'") (citing 42 U.S.C. § 2000e-5(e)(1)); *but see Nat'l. R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002) ("consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period.").  As such, the Court does not address the issue.

Jemison is alleged to have "repeatedly" and "continuously" called Plaintiff "stupid African" and "porch monkey." Doc. 28. *Second*, Jemison verbally threatened Plaintiff and assaulted Plaintiff by elbowing her. Doc. 2; Doc. 28. While Jemison's comments alone may be considered non-actionable "offensive utterance[s]," when considered together with Jemison's threats and actual physical assault, Plaintiff plausibly alleges a hostile or abusive work environment. *See Rivera v. Rochester Genesee Regional Transp. Auth.*, 743 F.3d 11, 24 (2d Cir. 2014) ("The use of racially offensive language is particularly likely to create a hostile work environment when, as here, it is presented in a 'physically threatening' manner."); *Castagna v. Luceno*, 558 Fed. App'x 19, 21-22 (2d Cir. 2014) (finding a reasonable person could conclude that offensive outbursts together with physical threats were "sufficiently severe *or* sufficiently pervasive . . . to have altered [plaintiff's] working conditions."); *La Grande,* 370 Fed. App'x at 210 (denying dismissal for a race-based hostile work environment claim, in part, because on four occasions a company manager physically threatened the plaintiff and called him a racial slur).

Plaintiff also plausibly alleges that Jemison's harassment was due to Plaintiff's race, color, and national original. As explained by the Second Circuit, "[i]t is axiomatic that mistreatment at work . . . is actionable under Title VII only when it occurs because of an employee's . . . protected characteristic." *Patane*, 508 F.3d at 112 (quoting *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001)); *see also Jackson*, 2012 WL 843631, at *4. Jemison's use of the slur "porch monkey," which the Fourth Circuit explained is a racial slur "about as odious as the use of the word 'nigger,'" *Boyer-Liberto v. Fontainebleau Corp.*, No. 13 Civ. 1473, 2015 WL 2116849, at *12 (4th Cir. May 7, 2015) (en banc), and reference to Plaintiff as "stupid African" sufficiently alleges that Jemison's conduct was based on Plaintiff's race, color, and national origin.

Defendant argues that Jemison's conduct is based on personal animosity towards Plaintiff, not Plaintiff's race, national origin, or color.  Def.'s Mem. at 9 (citing *Shabat v. Blue Cross Blue Shield of Rochester Area*, 925 F. Supp. 977, 982 (W.D.N.Y. 1996), *aff'd sub nom., Shabat v. Billotti*, 108 F.3d 1370 (2d Cir. 1997)); Def.'s Reply Mem. at 3 (citing *Brodt v. City of New York*, 4 F. Supp. 3d 562, 569 (S.D.N.Y. 2014)).  In *Shabat v. Blue Cross Blue Shield of Rochester Area*, 925 F. Supp. at 982, the court found comments about plaintiff's religion or national origin "involved nothing more than occasional, brief comments, some of which reflect a clash of personalities more than discriminatory animus," and did not create an "abusive work environment, permeated with discrimination."  However, a plaintiff is not required to show that his or her protected characteristic is the *only* motivating factors for the alleged conduct but must show only that it is *a* motivating factor.  *See Rivera*, 743 F.3d at 23.  Defendant may ultimately be correct that Jemison's behavior was motivated by personal animus towards Plaintiff and not Plaintiff's race, national origin, or color.  However, at this stage of the litigation, Plaintiff sufficiently alleges that race, national origin, or color were a motivating factor for Jemison's conduct.

Defendant's reliance on *Brodt v. City of New York*, 4 F. Supp. 3d 562, is also misplaced. In *Brodt*, the court found that plaintiff's supervisor's comments about plaintiff's religion, that plaintiff should pray for his supervisor and that plaintiff had nine children, and the supervisor's "constant touching and rubbing" of plaintiff's yarmulke were insufficient to state a claim for hostile work environment under Title VII.  4 F. Supp. 3d at 568-69, 571.  The court explained that these comments were "simple teasing, offhand comments, or isolated incidents of offensive conduct" without "negative implication" and noted that Plaintiff himself described his supervisor's conduct as "annoying."  *Id*. at 569, 570-71.  Here, Jemison did not objectively

comment on Plaintiff's race, color, or national origin, but rather repeatedly used racial slurs towards Plaintiff in a threatening manner.

### ii. Employer Liability

"Under Title VII, an employer's liability for such harassment may depend on the status of the harasser." *Vance v. Ball State Univ.*, 133 S.Ct. 2434, 2439 (2013); *see also Parra v. City of White Plains*, 48 F. Supp. 3d 542, 551 (S.D.N.Y. 2014). "If the harassing employee is the victim's co-worker, the employer is liable only if it was negligent in controlling working conditions," *Vance*, 133 S.Ct. at 2439, such as "if the employer failed to provide a reasonable avenue for complaint or . . . failed to take appropriate remedial action about harassment of which it knew, or in the exercise of reasonable care should have known." *Haggood*, 2014 WL 6473527, at *21 (citing *Summa v. Hofstra Univ.*, 708 F.3d 115, 124 (2d Cir. 2013)); *see also Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 107 (2d Cir. 2011). "Evidence that an employer did not monitor the workplace, failed to respond to complaints, failed to provide a system for registering complaints, or effectively discouraged complaints from being filed would be relevant." *Vance*, 133 S.Ct. at 2453. Courts may also evaluate the appropriateness of an employer's response by looking "to whether the response was immediate or timely and appropriate in light of the circumstances, particularly the level of control and legal responsibility [the employer] has with respect to [the employee's] behavior." *Summa*, 708 F.3d at 124 (alteration original).

Here, Defendant immediately suspended Jemison after the May 10, 2013 incident "pending the final outcome of the investigation" and "deemed it appropriate that upon her return to work, [Jemison] would be reassigned to another unit; to avoid any further altercations between the two employees." Doc. 19 Ex. C. However, the May 10, 2013 incident was the culmination

of what Plaintiff alleges was near daily harassment she suffered at the hands of Jemison since she returned to work a month earlier.  Doc. 28.  Plaintiff notified her employer about these incidents, including by handwritten letter, and claims that Defendant should have addressed her complaints regarding Jemison's conduct and threats prior to May 10, 2013.  *Id.*  Therefore, the question is whether Defendant's alleged failure to take any action against Jemison for three weeks after Plaintiff's April 19, 2013 complaint is reasonable.

In determining the reasonableness of an employer's actions, courts consider the amount of time that elapsed between the complaint and the remedial action.  *See Burns v. City of Utica*, 590 Fed. App'x 44, 48 (2d Cir. 2014) (finding an employer responded appropriately, in part, by suspending the plaintiff's co-worker nine days after the plaintiff filed a formal complaint); *Howel v. Town of Stratford*, 217 F.3d 141, 156 (2d Cir. 2000) (finding an employer's disciplinary response was unreasonable, in part, because it occurred five weeks after plaintiff reported the harassment).  Courts also take into account the level of the harassment complained of and whether the harassment persisted after the complaint was made.  *See Duch v. Jakubek*, 588 F.3d 757, 766-67 (2d Cir. 2009) (finding defendant's response was unreasonable where the harassment "persisted and escalated" months after plaintiff complained to her supervisor despite the fact that plaintiff's work schedule was adjusted to avoid working with the harassing co-worker); *Richardson*, 180 F.3d at 441-42 (denying summary judgment, in part, where Defendant responded to some of Plaintiff's complaints but "took no action" regarding other complaints and the "harassment continued after [Plaintiff] made [those] complaints."); *Summa*, 708 F.3d at 125 (finding liability could not be imputed where an employer responded "quickly," "within just days in all cases," "and in proportion to the level of seriousness of the event").

17

Here, in the three weeks between Plaintiff's first complaint and Defendant's remedial action, Jemison's alleged conduct continued and escalated into a physical assault. *See* Doc. 28 at 6 (Plaintiff's April 19, 2013 complaint describing Jemison's racial remarks and threatening comment to Plaintiff that she "wish[ed] [Plaintiff] were dead and never came back to work."); *id.* at 7 (Plaintiff's May 6, 2013 complaint describing Jemison's racial remarks and threat that she would "cut [Plaintiff's] throat fat African [sic]."); Doc. 2 at 6-7 (report describing Jemison's physical assault of Plaintiff by elbowing her). The record is devoid of any effort undertaken by Defendant in the interim other than Vidro advising Plaintiff that Labor Relations would handle her complaints. Doc. 28 at 7. At this stage of the litigation, Defendant's response was insufficient in light of the pervasive and threatening nature of Jemison's alleged conduct.

Defendant's motion for judgment on the pleadings as to Plaintiff's hostile work claim under Title VII is DENIED.

### b.   Retaliation

Title VII also provides that it is unlawful for an employer to discriminate against any employee because the employee has opposed any practice that is an unlawful employment practice under Title VII. 42 U.S.C. § 2000e–3(a). "To state a claim for retaliation in violation of Title VII, a plaintiff must plead facts that would tend to show that: (1) [plaintiff] participated in a protected activity known to the defendant; (2) the defendant took an employment action disadvantaging [plaintiff]; and (3) there existed a causal connection between the protected activity and the adverse action." *Abrams v. Dept. of Pub. Safety*, 764 F.3d 244, 257 (2d Cir. 2014) (citing *Patane,* 508 F.3d at 115); *see also Cunningham v. Consol. Edison Inc.*, No. 03 Civ. 3522 (CPS), 2006 WL 842914, at *16 (E.D.N.Y. March 28, 2006) (citing *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998)).

"Protected activity" is considered "an action taken to protest or oppose statutorily prohibited discrimination." *Cunningham*, 2006 WL 842914, at *16 (citing *Cruz*, 202 F.3d at 556). Defendant concedes that Plaintiff "participated in protected activity" by filing the NYSDHR complaint against Defendant in 2011 and that this activity was known to Defendant. Def.'s Mem. at 10. However, Defendant contends that, as pled, Plaintiff fails to allege that Defendant took an employment action disadvantaging Plaintiff or a causal connection between the protected activity and the adverse action. *Id.* at 10-11.

In the context of a retaliation claim, actions are "materially adverse" if "the employer's actions [are] . . . harmful to the point that they could well dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 57, 68 (2006) (internal quotations omitted). While the anti-retaliation provision of Title VII is not limited to discriminatory actions that "relate to the terms and conditions of employment," *id.* at 57, 70, "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished internal responsibilities, or other indices . . . unique to a particular situation'" may be considered materially adverse actions. *Cunningham*, 2006 WL 842914 at *16 (quoting *Galabya v. New York City Bd. Of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)); *see also Feingold*, 366 F.3d at 152. The Second Circuit has also recognized that "unchecked retaliatory co-worker harassment, if sufficiently severe, may constitute adverse employment action so as to satisfy the [second] prong of the retaliation *prima facie* case." *Rivera*, 743 F.3d at 27 (quoting *Richardson*, 180 F.3d at 446); *see also Parra*, 48 F. Supp. 3d at 553. As stated above, Plaintiff sufficiently alleges the existence of a hostile work environment. However, the Court does not reach the issue of whether

Jemison's harassment was sufficiently severe to constitute an adverse employment action because Plaintiff does not sufficiently allege causation.

A causal connection between the protected activity and the adverse employment action may be directly pled or pled by circumstantial evidence, including that the "protected activity was closely followed in time by the adverse action." *See Kalola v. Intl. Bus. Machines Corp.*, No. 13 Civ. 7339 (VB), 2015 WL 861718, at *8 (S.D.N.Y. Feb. 3, 2015) (citing *Cifra v. G.E. Co.*, 252 F.3d 205, 216 (2d Cir. 2001)); *DeCintio v. Westchester Cty. Med. Ctr.*, 821 F.2d 111, 115 (2d Cir. 1987). Plaintiff's conclusory allegations state that (1) Defendant failed to adequately respond to Plaintiff's complaints regarding her co-workers conduct as retaliation for her 2011 complaint to the NYSDHR, and (2) the May 10, 2013 incident was retaliation by Jemison for Plaintiff's 2011 NYSDHR complaint regarding Hendricks. *See* Doc. 2 at II.E ("I was assaulted on 9/20/11 and the case was settle[d], then I went back to work on 4/11/13 and they assaulted me again on 5/10/13 less than a month [after returning to work], they are retaliating against me because of the settled case[.]"); Doc. 19 Ex. A ("I feel like Harlem Hospital is retaliating against me because this is the second time its happened in less than a year."); Doc. 28 at 4 ("Because of the prior incident I have on 2011 which was settle[d] defendant (employer) did not take action immediately to protect me from the hostile work environment. Defendant (employer) waited until I sustained injury to suspend Denise Jemison (co-worker)."). The only nonconclusory connection that may be inferred from the pleadings is the time between the protected activity—the 2011 NYSDHR complaint—and the adverse action—the hostile work environment.

"Where, as here, a plaintiff relies only on timing to plead causation, the temporal proximity between the protective activity and adverse employment action must be 'very close.'"

20

*Vale*, 2015 WL 248603, at *12 (citing *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273

(2001)).  While the Second Circuit has "not drawn a bright line to define the outer limits beyond

which a temporal relationship is too attenuated to establish a causal relationship between the

exercise of a federal constitutional right and an allegedly retaliatory action," *Gorman–Bakos v.

Cornell Coop. Extension of Schenectady Cty.,* 252 F.3d 545, 554 (2d Cir. 2001), "[d]istrict courts

within the Second Circuit have consistently held that the passage of two to three months between

the protected activity and the adverse employment action does not allow for an inference of

causation."  *Murray v. Visiting Nurse Servs. of N.Y.*, 528 F. Supp. 2d 257, 275 (S.D.N.Y. 2007)

(collecting cases); *see also Petyan v. New York City Law Dept.*, No. 14 Civ. 1434 (GBD) (JLC),

2015 WL 1855961, at *15 (S.D.N.Y. Apr. 23, 2015) ("[plaintiff] cannot plausibly allege a

temporal proximity based on the facts of his case . . . . [a] ten-month interval [between filing the

EEO complaint and the adverse action] is simply too attenuated to give rise to an inference of

causation.").  Where a causal connection is found based on time periods greater than three

months, the delay is usually explained by unusual circumstances.  *See Grant v. Bethlehem Steel

Corp.*, 622 F.2d 43, 45-46 (2d Cir. 1980) (finding an eight month delay between plaintiff filing

an EEOC complaint and the adverse action was explained by plaintiff's binding eight month job

assignment given to him prior to Defendant receiving notice of the complaint).

 Here, approximately one and a half years have elapsed between the protected conduct—

filing a complaint with the NYSDHR on October 11, 2011—and the adverse action—Jemison's

harassing conduct beginning April 12, 2013.  However, Plaintiff alleges that she left work at

some point after the September 20, 2011 incident and returned to work on April 12, 2013.  An

"unusual circumstance" may be present in this case—that Plaintiff was not present at

Defendant's workplace during the time period between the protected conduct and adverse action.

However, even viewing the allegations most favorably to *pro se* Plaintiff, Plaintiff has not sufficiently alleged the necessary facts, specifically when Plaintiff stopped working for Defendant, to support this inference.  As pled, Plaintiff's allegations are insufficient to state a causal connection between the protected conduct and the adverse action.

Defendant's motion for judgment on the pleadings as to Plaintiff's retaliation claim under Title VII is GRANTED.

## V.    Conclusion

For the reasons set forth above, Defendant's motion for judgment on the pleadings is GRANTED in part and DENIED in part.  Specifically, Defendant's motion for judgment on the pleadings as to the hostile work environment claim is denied and the motion for judgment on the pleadings as to the retaliation claim is granted.  The parties are directed to submit a proposed Discovery Plan and Scheduling Order by June 30, 2015.  The Clerk of the Court is respectfully directed to terminate the motion, Doc. 22.

It is SO ORDERED.


Dated:    June 15, 2015
          New York, New York

                                                        _____
                                                        Edgardo Ramos, U.S.D.J.

22